# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| TINA PROCTOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:17-cv-06009-NKL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner ) | |
| Of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Tina Proctor appeals the Commissioner of Social Security's final decision denying her application for supplemental security income. The decision is affirmed.

**I.     Background**

Proctor was born in 1971, completed the eleventh grade, and obtained a G.E.D. She has worked as a cashier and a nurse's aide. She was struck by a car in September 2011 and spent a month in the hospital. At the time of filing her application for benefits, Proctor alleged that she became disabled on September 1, 2011. However, at the hearing before the Administrative Law Judge, Proctor, through her attorney, amended the alleged date of onset to January 21, 2014.

The ALJ denied Proctor's application on December 4, 2015. The Appeals Council denied her request for review on November 29, 2016. Proctor's appeal to this Court concerns mental limitations.

**A.     Psychological history**

Proctor suffered several fractures and traumatic brain injury after being struck by a car in September 2011. She showed "mild" impairments in cognition and behavior when she began

rehabilitation. Tr. 419. At the time of discharge in October 2011, she had met all of her rehabilitation goals with respect to the TBI. Tr. 452. She could follow multi-step and non-sequential instructions, solve simple and complex problems, track basic and complex conversation, and read multi-paragraph text without assistance. Tr. 452-53. She had some deficit in attention to detail in reading, "as she gets off topic." Tr. 453. She had decreased verbal organization and was verbose at times, and had deficits in terminating conversations and getting off topic. Tr. 454-55. She was "Not impaired" in the areas of short- or long-term memory, numerical reasoning, situational problem solving, awareness of problems, goal setting, initiation, planning, or carry over. Tr. 455. She was "Impaired" in attention/concentration (described as "mild—self distracted"), abstract reasoning (described as "mild for multi-component situations"), and organization, self-monitoring and time management (all described as "mild"). *Id.*

From March 2013 through December 2013, Proctor saw Samuel Fadare, M.D., a psychiatrist, a total of eight times, or about once a month. Tr. 205-230. She reported anxiety, depression, and feelings of anger. Throughout the year, Dr. Fadare prescribed Remeron, Paxil, Viibryd, or Seroquel. In September and November 2013, Proctor reported stable symptoms on her medication, and said she felt happier. In December 2013, she reported anxiety and feelings of anger in dealing with her teenaged children, and the doctor wrote that Proctor needed "to see a therapist to help with" her children. Tr. 205. The results of her mental status exam were normal, except for "some problems with short term memory." Tr. 208. Dr. Fadare renewed Proctor's Seroquel. Dr. Fadare never ordered in-patient treatment and Proctor was never hospitalized for mental-health related issues from March 2013 through December 2013.

From March 2014 through July 2015, Proctor saw Dr. Fadare a total of six times, or

about once every three months. At the visits, Proctor was alert, oriented, calm, and cheerful. Tr. 270, 277–78, 285–86, 293–94, 301–02, and 310. She had normal psychomotor activity, an unremarkable appearance, unremarkable speech, logical flow of thought, unremarkable thought processes, normal intellect, good insight, intact judgment, and no delusions or hallucinations. Tr. 269–70, 277–78, 285–86, 293–94, 301– 02, and 310. She was not suicidal or threating to others. Tr. 270, 277–78, 285–86, 293–94, 301–02, and 310. Her mental status exam showed "some problems with short term memory" in March 2014, June 2014, October 2014, January 2015, April 2015, and July 2015. Tr.270, 278, 286, 294, 302, and 310. Except for the March 2014 visit, however, Dr. Fadare recorded "Memory intact" on every exam. Tr. 270, 278, 286, 294, 302. The only medication that he prescribed from March 2014 through July 2015 was Seroquel, although he decreased the dosage in January 2015. Tr. 286. In October 2014, the doctor found that Proctor's symptoms were responding to the antidepressant medication, Tr. 296, and made the same finding in April 2015, Tr. 275. Dr. Fadare never ordered in-patient treatment during that time period, nor was Proctor hospitalized for mental-health related issues.

Proctor did complain in March 2014 of feelings of anger toward a former friend who had assaulted her, and Dr. Fadare suggested she see a therapist. Tr. 307. In June 2014, she told Dr. Fadare that she felt anxious, and had difficulty about every other day in controlling her anger with her children. Tr. 304. In October 2014, Proctor reported that she felt anxious and was losing control of her anger with her children. Tr. 296. In January 2015, she reported a stable mood. Tr. 283. In April 2015, she reported that she continued to experience anxiety, anger, and mood swings a few times per week or daily, and it was mostly her "children and change" that set her off. Tr. 280. In July 2015, she reported that she was doing well and her mood was stable. Tr. 267.

Proctor was seen in the emergency room for migraine in May 2014. The E.R. physician's exam findings included, "Psychiatric: Cooperative, appropriate mood & affect." Tr. 508.

At doctor's office visits in November 2014 and June 2015, the providers recorded that Proctor's mood was euthymic. Tr. 513 and 518.

From December 2103 through September 2015, Proctor received services from a social worker. Tr. 311-401. The social worker's progress notes reflect that Proctor frequently reported improvement in her mood, and with depression and anxiety symptoms. Tr. 314, 322, 332, 336, 360, 364, 367, 370, 374, 377, and 384. Proctor also reported socializing with friends, dating, and otherwise getting out of the house. Tr. 318, 332-33, 336, 353, 360, 364, 368, 375, 377, and 379. Proctor reported having bad days and good days, "especially when it comes to her children but she feels she is doing better." Tr. 316.

### B. Proctor's adult function report and hearing testimony

In her adult function report dated February 22, 2014, Tr. 142-149, Proctor stated that she takes care of her children and pet, without help. She has problems falling asleep and said she remembered things better before the car accident. She prepares meals and takes care of house and yard work without help or reminders. She goes outside daily, can go out alone, and shops weekly for groceries and personal items. She is able to pay bills and handle her money. Her hobbies are reading and puzzles, but she reads less than she used to and does not work puzzles at all. She spends time with others daily, whether in person or on the computer, talking, watching television or listening to music. She has fewer friends and dates less than before. She needs reminders to go to doctor appointments and needs someone to accompany her. She said that she has trouble with "memory, concentration and understanding, due to car hitting me." Tr. 147. Where asked on the form whether she finished what she started, she answered, "No." *Id.* Where

asked how well she can follow spoken instructions, she answered, "Good." *Id.* She gets along with authority figures, has never been fired from a job because of problems getting along with others, is "ok with changes," and has no unusual behaviors or fears. Tr. 148.

Proctor testified at the hearing before the ALJ on November 16, 2015. She has worked in the past as a cashier and as a nurse's aide. She said that she could not work now because she does not get along with others and has difficulty remembering things. Tr. 37. She testified that she tries not to go anywhere and to stay in the house to avoid dealing with people, and has short- and long-term memory problems. Tr. 39-40. She said she could not "remember anything" and had difficulty completing tasks. Tr. 40, 42. She also said that she became angry every day and had crying episodes three or four times per week. Tr. 40-42. She takes Seroquel daily, and when asked whether she had any side effects, testified, "No." Tr. 38. She testified that she had not worked since 2008 because she had been living with a person who "was paying all [her] bills and taking care of [her]." Tr. 43.

## C. Expert opinions

In May 2014, Esteban Alejo, M.D., performed a consultative exam. With respect to mental issues, Proctor reported symptoms of difficulty sleeping, crying spells, changes to appetite, lack of motivation, and sleeping all day. Tr. 256. Under Neurological findings, Dr. Alejo wrote, "The claimant was in a good mood. She had normal concentration, good eye contact. Speech was fluent and she had a good memory." Tr. 258. Under Impressions, the doctor wrote, "Mental issues: Patient in good mood, no emotional distress noted." Tr. 260. The only mental-health related Diagnosis was "Depression by history. On treatment at the present time." *Id.*

In June 2014, Marc Maddox, Ph.D., a non-examining, non-treating State agency

psychologist, reviewed Proctor's records and prepared a Psychiatric Review Technique Form. Tr. 54-55. Under "Additional Information," Dr. Maddox wrote that Proctor has the diagnosis of major depression and is prescribed medication, and that her symptoms "wax and wane." Tr. 55. She was cooperative at the consultative exam, was in a good mood, had normal concentration and good eye contact, her speech was fluent, and she had a good memory. According to her adult function report, she takes care of her own activities of daily living, lives with friends, prepares meals and does household chores as needed, grocery shops weekly, and manages her own finances. She also reported not having as many friends, and having memory and concentration difficulty, but that she can follow spoken instructions. Dr. Maddox opined that Proctor had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. He concluded that Proctor's impairments were non-severe and did not impose any work-related restrictions. The ALJ gave Dr. Maddox's opinion "significant weight." Tr. 18.

On October 5, 201, Dr. Fadare filled out a Medical Source Statement—Mental form. Tr. 470–71. Dr. Fadare listed mental diagnoses of generalized anxiety disorder and major depressive disorder, recurrent. Where asked whether Proctor had medication side effects, the doctor checked "Yes," and circled the option, "Drowsiness." Tr. 470. He opined that Proctor would miss work three days per month due to having "bad days" and would be off task more than 25% or more of the day. Tr. 470. Under Concentration and Pace, he opined that Proctor was markedly limited in maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; working in coordination with others without being distracted; completing

a normal workweek without interruptions from psychological symptoms. Under Social Interactions, he opined that Proctor was markedly limited in responding appropriately to criticism from supervisors, and getting along with coworkers. Under Adaptation, he opined that Proctor was markedly limited in travelling in unfamiliar places, and using public transportation. Tr. 471. Under Understanding and Memory, he opined that Proctor was mildly limited in the ability to understand and remember very short and simple instructions, and moderately limited in the ability to remember locations and work-like procedures, and understand and remember detailed instructions. Tr. 470.

Where asked to circle the factors upon which the opinion was based, Dr. Fadare circled "Clinical findings (such as the result of physical or mental status exams)" and "Diagnosis (statement of disease or injury based on its signs or symptoms)." *Id.* The ALJ gave Dr. Fadare's opinion little weight. Tr. 18.

A vocational expert, Barbara Myers, testified at the hearing before the ALJ. The ALJ asked if any occupation existed in significant numbers for a hypothetical person of Proctor's age, education, and work experience who was limited to light work; could lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently; could stand and walk, or sit, for six hours of a normal workday; should not climb ladders, ropes or scaffolds, and should be exposed to other postural activities only occasionally; should not be exposed to extremes of heat or cold, or concentrated, airborne irritants; should be limited to repetitive work, which is simple, routine and unskilled; and should not have a job which requires interaction with the general public. Tr. 48. The VE testified that the individual could work as a collator operator; merchandise marker; or small parts assembler. Tr. 49. All three jobs existed in significant numbers in the state and national economies. On cross examination, the VE testified that if the same hypothetical

individual was off task up to 25% of the day on a reoccurring basis, then there would be no competitive employment available to her.

### D. The ALJ's decision

The ALJ found that during the relevant period, Proctor had severe impairments of history of left leg and foot fractures, and right-sided temporal bone fracture with epidural hematoma and intracerebral contusions; back pain; asthma; anxiety; and depression. Tr. 13. Proctor did not claim to meet any Listings, and the ALJ did not find that she met any.

The ALJ found that Proctor has the residual functional capacity (RFC):

> [T]o perform light work as defined in 20 C.F.R. 416.967(b), except that she can lift, carry, push and/or pull 20 pounds occasionally, 10 pounds frequently, sit 6 hours in 8, and stand and/or walk 6 hours in 8, with occasional postural activities but no ladders, ropes or scaffolds, no exposure to extreme temperatures, and no concentrated exposure to concentrated airborne irritants. In addition, the claimant is limited to simple, repetitive, to routine, unskilled work with no complex instructions or tasks and no public interaction.

Tr. 15. The ALJ concluded that Proctor was not capable of performing past relevant work. However, the ALJ concluded there were jobs in significant numbers in the economy that Proctor could perform, including collator operator, merchandise marker, and small parts assembler. Accordingly, Proctor was denied benefits.

## II. Discussion

The ALJ gave Dr. Fadare's opinion little weight because it was not well-supported, whether by reference to objective medical findings or by his own treatment notes, and it was inconsistent with the observations of Proctor's social worker. Tr. 18. Proctor argues these were not good reasons for discounting it, and that the opinion of Dr. Maddox is not adequate support for the ALJ's conclusions with respect to mental limitations. She argues that if Dr. Fadare's

8

opinion concerning her marked limitations in sustained concentration and persistence, social interaction, and adaptation had been given appropriate weight, she would have been found eligible for benefits.

The Court's review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). If the Court finds that the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, then the Commissioner's decision must be affirmed. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

The ALJ evaluated the opinion evidence under 20 C.F.R. §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6), which direct the Commissioner to consider whether there is an examining or treatment relationship; the length of the treatment relationship and frequency of examinations; the nature and extent of the treatment relationship; supportability; consistency; specialization; and other factors such as familiarity with the disability programs and their evidentiary requirements. An ALJ must give controlling weight to a treating medical source opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence. *Papesh v. Colvin,* 786 F.3d 1126, 1132 (8th Cir. 2015) (*quoting Wagner v. Astrue,* 499 F.3d 842, 848-49 (8th Cir. 2007)). The opinion may be given "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id*. (citations omitted). The ALJ "may discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (*quoting Miller v. Colvin*, 784 F. 3d 472, 477 (8th Cir. 2015)).

For the reasons discussed below, the Court concludes that the ALJ's decision is supported by substantial evidence on the whole record.

### A. Dr. Fadare's opinion was not well supported.

The first reason that the ALJ gave for discounting Dr. Fadare's opinion was that it was not well-supported, whether by reference to objective medical findings or by the doctor's own treatment notes. Dr. Fadare filled out a check-box form, opining that Proctor was markedly limited in maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; working in coordination with others without being distracted; completing a normal workweek without interruptions from psychological symptoms; responding appropriately to criticism from supervisors; getting along with coworkers; and travelling in unfamiliar places or using public transportation. He opined that Proctor would be off-task 25% of the day, and that her medication caused the side-effect of drowsiness. He also opined that she would miss work three days a month due to having bad days.

Dr. Fadare did not write any supporting, objective findings on the form, nor separately provide any with the filled-out form. The ALJ did not discount the opinion solely because the doctor used a check-box form, but an ALJ must consider "the degree to which the source presents relevant evidence to support an opinion" and "how well the source explains the opinion." Social Security Ruling 06-03p. Thus, an ALJ may consider the fact that, as here, a medical source has not cited any supporting, objective clinical findings. *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (citing 20 C.F.R. § 416.927(d)(2); *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)).

An ALJ may also discount such a conclusory opinion where it "includes significant

impairments and limitations that are absent from his treatment notes and [the claimant's] medical records." *Cline,* 771 F.3d at 1104. The impairments and limitations that Dr. Fadare identified are absent from his treatment notes and Proctor's medical records. Dr. Fadare's treatment notes for the relevant period reflect almost entirely unremarkable mental status exams. Further, there are no findings relating to difficulty with maintaining attention or concentration, distraction, keeping to a schedule, punctuality, attendance, working with others, completing a workweek without interruption from psychological symptoms, or ability to travel in unfamiliar places.[1] To the extent that Proctor had issues getting along with people, the treatment notes reflect that the issues were with a former friend who had assaulted her and difficulties that she had with her teenage children. Further, Dr. Fadare never indicated in the treatment notes that Proctor was distracted 25% or some other amount of the time, nor did he record that Proctor's medication was causing drowsiness.

With respect to having "bad days," Dr. Fadare's treatment notes do reflect Proctor's reports at her June 2014, October 2014, and April 2015 visits of having frequent bad days, involving anger and anxiety. But at the June 2014 visit, the doctor found her mental status to be "stable." Tr. 299; at the October 2014 visit, Proctor admitted that she was "doing well" and was "in a better mood," Tr. 291; and at the April 2015 visit, the doctor found her mental status to be "stable" and that her medication was working, Tr. 275. Nothing in the doctor's notes reflects

---

[1] The doctor did observe on three occasions during the relevant time period that Proctor had "some problem with short term memory," although he did not record any symptoms or findings concerning the extent of such problem. In fact, in many of the treatment records during the relevant time period, the doctor found "Memory intact" on exam.

In any event, Dr. Fadare's identification of "marked" limitations to which Proctor points, Doc. 11, p. 9, do not relate to memory. Under the section of the form labeled "Understanding and Memory," the doctor opined that Proctor was only "mildly" limited in the ability to understand and remember very short and simple instructions, and "moderately" limited in the ability to remember locations and work-like procedures, and understand and remember detailed instructions. Tr. 470.

11

that these bad days were of a nature that would cause her to miss work three days a month, let alone that they reflect a medically determinable impairment that would last or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A).

Furthermore, the doctor's treatment of Proctor was conservative, which is inconsistent with his extreme opinion. He prescribed medication and Proctor has been taking the same one since at least March 2014. Dr. Fadare even decreased the dosage in January 2015. While Proctor saw Dr. Fadare about once a month before the alleged onset date, she saw him only about once every three months after the alleged onset date. Dr. Fadare never ordered in-patient treatment, nor was Proctor ever hospitalized for mental-health related issues. "Impairments that are controllable with treatment do not support a finding of total disability." *Pepper ex rel. Gardner v. Barnhart,* 342 F.3d 853, 855 (8th Cir. 2003) (internal quotations and citations omitted).

Proctor also points to her "low" GAF scores as consistent with Dr. Fadare's opinions. Doc. 11, p. 11. However, GAF scores are of little value, *Nowling v. Colvin,* 813 F.3d 1110, 1123 (8th Cir. 2016), and not intended for the assessment of disability, *DeBoard v. Comm'r of Soc. Sec.,* 211 Fed. Appx. 411, 415 (6th Cir.2006) (recognizing that the Commissioner has declined to endorse the GAF scale for use in the disability programs) (citing 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)).

Proctor also argues that the ALJ's "heavy" reliance on Proctor's mental status evaluations was misplaced, quoting a portion of Program Operation Manual System (POMS) 34001.032(C)(3). Doc. 11, p. 10. Section 34001.032(C)(3) states in its entirety:

> We must exercise great care in reaching conclusions about your ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by

> a clinician, or based on your ability to complete tasks in other settings that are less demanding, highly structured, or more supportive. We must assess your ability to complete tasks by evaluating all the evidence, with emphasis on how independently, appropriately, and effectively you are able to complete tasks on a sustained basis.

Nothing in POMS 34001.032(C)(3) prevented the ALJ from considering Proctor's mental status evaluations. They are part of "all the evidence." They are in fact inconsistent with Dr. Fadare's extreme opinion. Also, as discussed below, Dr. Fadare's opinion is inconsistent with substantial evidence on the whole record.

Substantial evidence supports the ALJ's conclusion that Dr. Fadare's opinion was not well supported, whether by the check-box form or his treatment notes.

### B. Dr. Fadare's opinion was inconsistent with the social worker's records.

The ALJ also discounted Dr. Fadare's opinion because it was inconsistent with the social worker's records. Tr. 18. The social worker's records reflect that Proctor frequently reported improvement in her mood, and with depression and anxiety symptoms; socialized with friends; dated; and otherwise got out of the house. Dr. Fadare opined that Proctor would have three bad days per week, and the social worker's records do indicate that Proctor had bad days, but they tended to be related to her teenage children and Proctor thought she was doing better. Substantial evidence supports the ALJ's conclusion that the social worker's records are inconsistent with Dr. Fadare's opinion.

Proctor also points out that the social worker's records reflect other difficulties, such as anger, anxiety, struggles with boundaries, the need for assistance, and trouble accepting criticism. Tr. 314, 316, 319, 327, and 470. But this Court cannot reverse the Commissioner's decision because substantial evidence supports the contrary outcome, or because it would have decided the case differently. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). If the

evidence supports two inconsistent positions, and one of those positions supports the Commissioner's decision, then the Commissioner's decision must be affirmed. *Wright v. Colvin,* 7890 F.3d 847, 852 (8th Cir. 2015). Therefore, Proctor's argument fails.

### C. Proctor's remaining argument fails.

Finally, Proctor argues that having discounted Dr. Fadare's opinion, the ALJ should not have relied on the opinion of Dr. Maddox, the state agency psychological consultant, because he was a non-examining consultant and his opinion is unsupported. Doc. 11, p. 12. She further argues that neither Dr. Maddox's opinion nor any other part of the record provides support for the ALJ's RFC determination that she is limited to simple, repetitive, routine, unskilled work with no complex instructions or tasks and no public interaction. *Id.* These arguments fail.

First, an ALJ must consider such an expert's opinion, because it is part of the opinion evidence. "[S]tate agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation, and ALJs must consider their findings as opinion evidence." *See* 20 C.F.R. §§ 404.1527(d)(1), and 404.1527(f)(2)(I). "[O]pinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *See* SSR 96–6p. For example, an ALJ may rely on non-treating source opinions in cases where, as here, the record contains no well-supported, treating source opinions. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (where the medical record did not support the opinion of the claimant's treating physician, the ALJ could "rely instead on the opinions of the state agency medical consultants, which were more consistent with the medical evidence") (citing *Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009)); and *Anderson v. Barnhart*, 344 F.3d 809 (8th Cir. 2003) (the ALJ properly credited the opinion of a consulting physician over that of the claimant's family physician because of

inconsistencies in the family physician's opinions).

Second, Dr. Maddox's opinion is well-supported. Dr. Maddox specifically cites support in the record, including Proctor's diagnosis of major depression for which she is medicated and that her symptoms "wax and wane." Tr. 55. He cites information from the report of Proctor's May 2014 consultative exam with Dr. Alejo, who observed that Proctor was in a good mood, had normal concentration and good eye contact, had fluent speech, and had a good memory. Dr. Maddox also cites information from Proctor's adult function report, *i.e.,* that she takes care of her own activities of daily living, lives with friends, prepares meals and does household chores as needed, grocery shops weekly, and manages her own finances. He also acknowledged that she reported not having as many friends, and having memory and concentration difficulty, but that she can follow spoken instructions. The information he cited is consistent with his findings that she has mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration, and that Proctor's impairments were non-severe and did not impose any work-related restrictions. The ALJ gave the opinion significant weight, although the ALJ did further conclude that "evidence of some ongoing anxiety, depression, and mild memory loss supports a finding of moderate limitation with regard to concentration, persistence, and pace." Tr. 15.

That Dr. Maddox rendered his opinion in June 2014, and therefore did not have access to Proctor's treatment records from her later visits with Dr. Fadare, does not mean that Dr. Maddox's opinion is unsupported and entitled to no weight, as Proctor suggests. As discussed above, Dr. Fadare's treatment records certainly do not support the marked limitations to which Dr. Fadare opined. Moreover, Dr. Maddox's opinion is consistent with substantial

15

evidence on the whole record, including the social worker's records, discussed above. In addition, Proctor also admitted in her adult function report that she takes care of her children and pet without help; spends time with others daily, whether in person or on the computer, talking, watching television or listening to music; gets along with authority figures, has never been fired from a job because of problems getting along with others, is "ok with changes," and has no unusual behaviors or fears. Tr. 148. As for other medical records, a May 2014, E.R. physician's exam findings included, "Psychiatric: Cooperative, appropriate mood & affect," Tr. 508, and at doctor's office visits in November 2014 and June 2015, the providers recorded that Proctor's mood was euthymic, Tr. 513 and 518. The ALJ's decision to give Dr. Maddox's opinion significant weight is supported by substantial evidence on the whole record.

Finally, Proctor argues that it is unclear how the ALJ determined that her severe mental impairments limited her to only simple, routine, unskilled work with no complex instructions or tasks and no public interaction, because the ALJ gave Dr. Fadare's opinion little weight and Dr. Maddox did not opine about those topics. The ALJ is not required to determine an RFC based solely on one specific medical opinion. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Rather, the ALJ considers all the evidence, including medical evidence, and it ultimately up to the ALJ to determine the weight each opinion is due. *See Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).

In any event, the ALJ's RFC finding that Proctor was limited to only simple, routine, unskilled work with no complex instructions or tasks and no public interaction was consistent with certain aspects of both Dr. Maddox's and Dr. Fadare's opinions. For example, the ALJ gave Dr. Fadare opinion little weight, specifically, the portions concerning extreme limitations. However, Dr. Fadare also opined that Proctor was moderately limited in understanding,

remembering, and carrying out detailed instructions, and mildly limited in the ability to understand and remember very short and simple instructions, Tr. 470, which supports the ALJ's finding. Dr. Maddox did not believe that Proctor's impairments imposed any work limitations, so his opinion supports that Proctor can perform unskilled work and interact with supervisors and co-workers without limitation.

The ALJ's finding is also consistent with the record as a whole. For example, Proctor has severe impairments of anxiety and depression. She had "mild" cognitive deficits following her car accident, some decreased verbal organization, deficits in terminating conversations and getting off topic, mild impairment in attention and concentration due to self-distraction, mild problems with abstract reasoning, and mild problems with organization. However, she was not impaired in the areas of short- or long-term memory, numerical reasoning, situational problem solving, awareness of problems, goal setting, initiation, planning, or carry over. A May 2014 consultative exam showed that Proctor had normal concentration and good memory. Simple, routine, unskilled work with no complex instructions or tasks, and no public interaction is consistent with the foregoing.

She was cooperative, calm and cheerful at her appointments with Dr. Fadare; other doctors observed that she was cooperative with an appropriate or good mood; and she admitted that she could socialize with friends, that she dated, and that she could get along with authority figures and handle changes, which is consistent with Proctor having no limitations in interacting with supervisors or coworkers.

The foregoing demonstrates that the ALJ's decision to give Dr. Maddox's opinion substantial weight, and limit Proctor to simple, repetitive, routine, unskilled work with no

complex instructions or tasks and no public interaction, is supported by substantial evidence on the whole record, including some medical evidence.

## III. Conclusion

The Commissioner's decision is affirmed.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  October  10, 2017  
Jefferson City, Missouri